IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00917-MEH-KMT

DAVID P. SHERER,
JOHN H. LICHT,
MIKE LOPEZ,
BARBARA BRICKLEY, and
AARON JOHNSON,

       Plaintiffs,

v.

UNITED STATES FOREST SERVICE,
GLENN P. CASAMASSA, Forest Supervisor for Arapaho & Roosevelt National Forest, and
DAVID GAOUETTE, United States Attorney,

       Defendants.

---

## OPINION AND ORDER ON THE MERITS

---

**Michael E. Hegarty, United States Magistrate Judge.**

       This case comes before the Court for resolution on the merits of the Plaintiffs' claims. The parties consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Docket #27.) The matter is fully briefed, and oral argument would not materially assist the Court in its adjudication. The Court considers the Plaintiffs' brief (docket #112), the Defendants' response (docket #115), and the Plaintiffs' reply (docket #117), in addition to the Administrative Record as designated (dockets ##83, 108, 120).

       The Mt. Evans High-Impact Recreation Area ("HIRA") encompasses the last fifteen miles of Colorado State Highway Five, which runs through the Arapaho National Forest in Colorado. (*See* docket #112 at 7-8.) *See also* Admin. R. at E00593. Pursuant to the Federal Lands Recreation Enhancement Act ("REA"), the United States Forest Service charges a "standard amenity recreation

fee" for "recreational use" of the HIRA, in the amount of $10.00 per vehicle or $3.00 for pedestrians. (Docket #113 at 9.) Admin. R. at E00468-469 (fee schedule dated March 2008). In this lawsuit, Plaintiffs assert that Defendant Forest Service "unlawfully demand[s] standard amenity fees, under threat of criminal enforcement" at Mt. Evans, "in excess of the Service's statutory authority." (*Id.* at 7.) For the reasons stated below and the entire record herein, the Court finds that, pursuant to the Administrative Procedures Act ("APA") standard of review and the plain language of the REA, Defendants did not exceed their statutory authority, nor did the challenged action constitute an arbitrary or capricious exercise of such authority. Accordingly, Defendants are entitled to judgment in their favor on all claims in this case, and judgment for Defendants will enter contemporaneously with this order.

**LEGISLATIVE AND STATUTORY BACKGROUND**

Congress initiated the Recreation Fee Demonstration program in 1996, which authorized revenue generated by charging fees for the use of and access to federal lands. The Federal Lands Recreation Enhancement Act ("REA"), enacted in 2004, repealed the Recreation Fee Demonstration program and established new guidelines governing the collection of fees "at Federal recreational lands and waters." 16 U.S.C. §§ 6801-6814. *See also Lauran v. U.S. Forest Service*, 141 F. App'x 515, 518 n.1 (9th Cir. 2005). The purpose of the REA "is to improve recreational facilities and visitor opportunities on federal recreational lands by reinvesting receipts from fair and consistent recreational fees and passes . . . ." H.R. Rep. No. 108-780(I), 2004 WL 2920863, at *12 (2004). Congressman Pombo, in a report on the REA submitted to the House of Representatives Committee on Natural Resources, identified a concern with the previous Fee Demonstration Program as "the possibility of creating an unreasonable barrier to public use" by the collection of fees on certain federal lands. *Id.* However, the report indicated that the "agencies have concluded that fees do not present such a barrier to public use," as "recreation fees are such a small part of the overall expense

for a visit to a recreation site that indeed, they play almost no role in the decision-making process." *Id*. at *13. The report represented that "mitigation measures such as providing reasonably priced annual passes and free days have been put in place." *Id*. Congressman Pombo explained how "one of the main purposes of H.R. 3283 [the REA] and the Fee Demo Program is to enhance the visitor experience by investing fees in improving recreation opportunities." *Id*. Congressman Pombo noted that the REA "includes specific restrictions to ensure that any established fee would be for managed recreation purposes that contain substantial federal investment for the visitor." *Id*.

Plaintiffs allege the Defendants have violated, and continue to violate, specific provisions within the REA. (Docket #67 at 10-12.) Section 6802(a) authorizes the Secretary of Agriculture, with respect to the Forest Service, to "establish, modify, charge, and collect recreation fees at Federal recreational lands and waters as provided for in this section." Section 6802(f) articulates criteria for charging a "standard amenity recreation fee," which is the fee in question at the Mt. Evans HIRA. Section 6802(f), in pertinent part, provides that a standard amenity recreation fee may be charged as follows:

> Except as limited by subsection (d) of this section, the Secretary may charge a standard amenity recreation fee for Federal recreational lands . . under the jurisdiction of . . . the Forest Service, but only at the following:
> . . .
> (4) An area - -
>     (A) that provides significant opportunities for outdoor recreation;
>     (B) that has substantial Federal investments;
>     (C) where fees can be efficiently collected; and
>     (D) that contains all of the following amenities:
>         (I) Designated developed parking.
>         (ii) A permanent toilet facility.
>         (iii) A permanent trash receptacle.
>         (iv) Interpretive sign, exhibit, or kiosk.
>         (v) Picnic tables.
>         (vi) Security services.

The limiting provision referred to in Section 6802(f), Section 6802(d)(1), lists certain limitations on fee collection, stating:

> The Secretary shall not charge any standard amenity recreation fee . . . for Federal recreational lands . . . administered by . . . the Forest Service . . . for any of the following:
> (A) Solely for parking, undesignated parking, or picnicking along roads or trailsides.
> (B) For general access unless specifically authorized under this section.
> (C) For dispersed areas with low or no investment unless specifically authorized under this section.
> (D) For persons who are driving through, walking through, boating through, horseback riding through, or hiking through Federal recreational lands and waters without using the facilities and services.
> (E) For camping at undeveloped sites that do not provide a minimum number of facilities and services as described in subsection (g)(2)(A) of this section.
> (F) For use of overlooks or scenic pullouts.
> . . .

Additionally, Section 6802(e)(2) explicitly bars charging an entrance fee "for Federal recreational lands and waters managed by . . . the Forest Service." Section 6801(3) defines an entrance fee as "the recreation fee authorized to be charged to enter onto lands managed by the National Park Service or the United States Fish and Wildlife Service."

Section 6811 describes the enforcement authority and permissible mechanisms to ensure payment of the recreation fees as authorized by the REA. Section 6811(a) dictates that the Secretary "shall enforce payment of the recreation fees authorized by this chapter." Section 6811(d) provides the penalty for non-payment as "a Class A or Class B misdemeanor, except that in the case of a first offense of nonpayment, the fine imposed may not exceed $100 . . . ."

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs challenge a September 2005 implementation plan issued by Defendant Forest Service, which designated the Mt. Evans recreational area corridor as a HIRA pursuant to the REA.[1]

---

[1] Plaintiffs initiated this action on May 5, 2008. After filing their first Amended Complaint, this Court adjudicated a Motion to Dismiss filed by Defendants and dismissed the action initially with prejudice for Plaintiffs' failure to properly allege a waiver of sovereign immunity. (Docket

(*See* docket #100 at 1-2.)  Plaintiffs, all residents of Colorado, attest to their use of the Mt. Evans HIRA for parking, taking photos, skiing, climbing, picnicking, hiking, and other recreational activities.  (Docket #67 at 5-7.)  Plaintiffs claim that the Forest Service charges what can be considered an entrance fee, which is prohibited by the REA, in that the Service "continue[s] to charge a fee for motorists entering the HIRA, despite Congress's specific requirement that persons must be allowed, without charge, to travel through the area without stopping to use any amenities." (Docket #112 at 20.)  Plaintiffs describe how "the Forest Service charges a fee for all activities except nonstop travel anywhere within the Mt. Evans HIRA, including visitors parked within the state highway right of way, in City- and County-owned Parks, and at overlooks and scenic pullouts." (*Id.* at 23.)  Plaintiffs believe that this practice clearly contradicts the limiting language in the REA. (*See id.*)

Citing to the Administrative Record, Plaintiffs allege that Defendant Forest Service threatens criminal prosecution for failure to pay the standard amenity fee.  (Docket #112 at 29.)  Plaintiffs represent that the Service issues violation notices to visitors who have not paid the fee, and "the notices are authorized charging commission of a misdemeanor and levying a fine."  (*Id.*)  Plaintiffs believe that because criminal penalties are at issue, *Chevron* deference to agency action is inapplicable.  (*Id.* at 13.)

In addition to contesting the charge and collection of a standard amenity fee in the Mt. Evans HIRA generally, Plaintiffs challenge Defendant Forest Service's alleged regulation of conduct on non-federal land within the HIRA.  (Docket #112 at 31.)  Plaintiffs believe that the REA conveys no such authority, nor does the Property Clause overtly permit "enforc[ing] federal law on non-

---

#54.)  Upon a Motion for Reconsideration filed by Plaintiffs, the Court adjusted its order to dismissal without prejudice and permitted Plaintiffs to file a Second Amended Complaint on April 23, 2009, which is presently the governing pleading.  (*See* dockets ##65, 67.)

federal land." (*See id.* at 33.) This argument applies to the Summit Lake Denver Mountain Park and Echo Lake Denver Mountain Park within the Mt. Evans HIRA. (Docket #67 at 18.)

The REA does not provide for a private right of action, thus, Plaintiffs rely on the judicial review provisions of the Administrative Procedure Act ("APA") in bringing their claims.[2] (Docket #67 at 5; *see also* docket #98.) Plaintiffs contend that this Court reviews the actions of Defendant Forest Service *de novo*. (Docket #112 at 8.) Plaintiffs request the Court to find that Defendant Forest Service exceeded the scope of its legislative authority and to enjoin Defendant "from any further implementation of its policy of charging for all uses except nonstop travel in the Mt. Evans HIRA." (*Id*. at 35.)

Defendants assert that Plaintiffs "have confused the standard of review for an appellate court reviewing a district court's decision with the standard of review for a district court reviewing final agency action under the APA." (Docket #113 at 18.) Defendants believe, pursuant to the APA, this Court's standard of review is limited to determining whether the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." (*Id*. at 17 (citing 5 U.S.C. § 706(2)(A)).) Under this standard, Defendants ask the Court to uphold the Service's designation of "the Mt. Evans HIRA as an area within which the Forest Service can collect a standard amenity recreation fee." (*Id*. at 19.) Defendants disagree with Plaintiffs' contention that the HIRA lacks the nine requisite components for the charging of a fee, as prescribed by the REA. (*Id*.) Defendants suggest that, under the common usage for the term "area," "the Forest Service can properly charge a fee for a geographic region containing the amenities and attributes listed in REA's

---

[2]After a lengthy process of discussion on the record and an exchange in response to this Court's Order to Show Cause issued September 8, 2009, the Court satisfied itself of subject matter jurisdiction over this lawsuit, as further explained in the analysis section of this order. (*See* docket #97 (Order to Show Cause); dockets ##98, 99 (the parties' responses to the Order to Show Cause); docket #100 (discharge of the Order to Show Cause).)

nine requirements." (*Id*. at 20.)

Defendants contend that even if ambiguity could be read into the REA, their interpretation of the statute is reasonable and entitled to *Chevron* deference. (*Id*. at 25.) In response to Plaintiffs' argument that Defendant Service threatens criminal prosecution for non-payment, Defendants represent that "the Forest Service has not prosecuted anyone for nonpayment of a fee at Mt. Evans." (*Id*. at 26 n.6.) Moreover, Defendants allege that the "rule of lenity" potentially precluding *Chevron* deference is inapplicable to this matter, as Plaintiffs bring a civil claim challenging the agency decision to designate the HIRA in the first instance. (*Id*. at 26.)

Defendants believe the decision to designate the Mt. Evans area as a HIRA was not arbitrary and capricious, as the area contains amenities described in the REA criteria. (*Id*. at 28.) Furthermore, the Mt. Evans HIRA meets the added requirements set forth by the Service in additional Guidelines. (*Id*. at 29.) Regarding the prohibitions the Plaintiffs allege are violated by Defendants, Defendants rebut each contention. (*Id*. at 30-34.) Defendants aver that the designation of the area as a HIRA and allowing collection of the standard amenity fee fulfills the purpose of the REA, in that the fees fund the investment made by the Service back into the operation and maintenance of the HIRA. (*See id*. at 29.)

In response to Plaintiffs' assertion that non-federal lands may not be included within the federal HIRA jurisdiction, Defendant Forest Service identifies the Organic Act, 16 U.S.C. § 551, as authority supporting the two parks' inclusion. (*Id*. at 36.) Defendants argue that it is necessary for the protection of federal interests on federal land to extend the fee collecting authority to the adjacent municipally owned lands. (*Id*. at 37.) Defendants explain how the REA provides authority to Defendant Service to enter into cooperative agreements with non-federal entities, and the Collection Agreement between Defendant Service and the City and County of Denver establishes such cooperative relationship. (*Id*. at 38.)

Plaintiffs submitted a reply in support of their opening brief, asserting that they do not bring a "general challenge to the service's designation of High Impact Recreation Areas." (Docket #117 at 1.) Plaintiffs state they challenge "whether, by designating a HIRA at Mt. Evans the Service can exempt itself from compliance with the explicit provisions defining and delimiting the scope of its fee authority" pursuant to the REA. (*Id*. at 1-2.) Plaintiffs contend that the Fee Station Operations Manual contradicts Defendant Forest Service's representation that "if a visitor says he is not stopping within the HIRA other than to take a picture, there is no charge." (*Id*. at 3.) Plaintiffs reiterate their argument that the REA constitutes a criminal statute, thus the Court should not apply *Chevron* deference to the Service's actions. (*Id*. at 6-7.) Finally, Plaintiffs contest Defendants' allegation that the Organic Act provides authority for fee collection on non-federal land within the Mt. Evans HIRA. (*Id*. at 9.)

## STANDARD OF REVIEW

Section 706 of 5 U.S.C. governs judicial review of both formal and informal agency action. *Olenhouse v. Commodity Credit Corp*., 42 F.3d 1560, 1573 (10th Cir. 1994). The Court may "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] in excess of statutory jurisdiction, authority, or limitations . . . ." 5 U.S.C. § 706(2). "Agency action, whether it is classified as 'formal' or 'informal,' will be set aside as arbitrary unless it is supported by 'substantial evidence' in the administrative record." *Pennaco Energy, Inc. v. U.S. Dep't of the Interior*, 377 F.3d 1147, 1156 (10th Cir. 2004) (citing *Olenhouse*, 42 F.3d at 1575). Review under the arbitrary and capricious standard "is generally based on the full administrative record that was before all decision makers. . . . The district court must have before it the 'whole record' on which the agency acted." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) (citations omitted). "The complete administrative record consists of all documents and materials directly or indirectly considered by

the agency." *Bar MK Ranches*, 994 F.2d at 739.

In order to afford appropriate deference, the Court does not review the agency action *de novo*, but reviews "the administrative agency's decision as an appellate body." *Center for Native Ecosystems v. Salazar*, No. 09-cv-01463-AP, 2010 WL 1961740 at *3 (D. Colo. Apr. 14, 2010) (citing *Olenhouse*, 42 F.3d at 1580 (stating, "Reviews of agency action in the district courts must be processed *as appeals*." (emphasis in original)). The Court must review the agency action with a presumption of validity; "the burden is on the petitioner to demonstrate that the action is arbitrary and capricious." *Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780, 793 (10th Cir. 2010) (citing *Sorenson Commc'ns, Inc. v. F.C.C.*, 567 F.3d 1215, 1221 (10th Cir. 2009)). "Agency action is arbitrary and capricious if the agency 'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency,' or if the agency action 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Id*. (citation omitted). The Court is not to substitute its judgment for that of the agency, as "the court must rely upon the reasoning set forth in the administrative record and disregard post hoc rationalizations of counsel." *Sorenson Commc'ns, Inc*., 567 F.3d at 1221 (citing *Olenhouse*, 42 F.3d at 1580).

## **ANALYSIS**

Plaintiffs identified the September 2005 REA implementation plan produced by Defendant Forest Service as the contested final agency action in this matter.[3] (*See* docket #98.) According to Plaintiffs, the 2005 plan "declared that the Mt. Evans recreational area corridor is a High Impact

---

[3]Defendants agreed to the designation of Mt. Evans as an area at which a standard amenity recreation fee could be collected, "which decision is embodied in the September 2005 document entitled 'Implementation Plan,'" as the final agency action challenged by Plaintiffs. (Docket #99 at 2.)

Recreational Area where fees could be collected without regard to the restrictions contained in the REA." (*Id*. at 1-2.) The Court construes Plaintiffs' challenge in essentially three parts. First, Plaintiffs dispute Defendants' characterization of the Mt. Evans area as an area in which fees can be collected because not all parts of the Mt. Evans HIRA include the nine requirements articulated in the REA. Second, Plaintiffs believe that Defendants' designation of the Mt. Evans area as a HIRA impermissibly disregards the limitations on fee collection listed in the REA. Third, Plaintiffs object to the inclusion of non-federal land subject to the federal amenity fee within the Mt. Evans HIRA.

The Court begins by satisfying itself of subject matter jurisdiction over this suit and by explaining the principles of statutory construction and interpretation applied in this order. The Court then addresses each of the Plaintiffs' arguments.

## I.      Subject Matter Jurisdiction

In order to invoke the APA's review provisions, satisfy the APA's standing requirement, and demonstrate the dispute is ripe for review, the agency in question must have taken final action. Section 704 of the APA provides that an agency action is subject to judicial review when it is either: (1) "made reviewable by statute," or (2) a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. If the plaintiff does not identify "any other statute which provides for judicial review of the official conduct it challenges, . . . any attempt to obtain judicial review directly under section 704 of the APA must be preceded by final agency action." *Pennaco Energy, Inc.*, 377 F.3d at 1155; *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 549 (10th Cir. 2001) (citing *e.g., Ash Creek Mining Co. v. Lujan*, 934 F.2d 240, 243 (10th Cir. 1991) (also identifying "final agency action" as a factor for determining ripeness)). "Whether federal conduct constitutes final agency action within the meaning of the APA is a legal question." *Pennaco Energy, Inc.*, 377 F.3d at 1155. Plaintiffs bear the burden of "identifying specific conduct

and explaining how it is 'final agency action.'"[4] *Cherry v. U.S. Dep't of Agr.*, 13 F. App'x 886, 890 (10th Cir. 2001) (citing *Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000)).

The parties agree that the September 2005 implementation plan constitutes the final agency action challenged by Plaintiffs, however, "[a]ny federal court must, *sua sponte*, satisfy itself of its power to adjudicate in every case and at every stage of the proceeding." *Harris v. Ill.-Cali. Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982). For an agency action, even if informal, to be final for the purposes of subject matter jurisdiction, the action must "mark the 'consummation' of the agency's decisionmaking process . . . [and] must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Pennaco Energy, Inc.*, 377 F.3d at 1155 (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

The Court concludes that the September 2005 implementation plan marked the consummation of Defendant Forest Service's decision to designate the Mt. Evans recreation area as an area in which fees could be collected pursuant to the REA. In its evaluation of subject matter jurisdiction, the Court considered whether the implementation plan could be considered "final" due to the subsequent Operations Manuals and stated Forest Service policies that modified certain material conclusions included within the implementation plan. The Court finds that, similar to the Tenth Circuit's determination in *Pennaco Energy, Inc.*, the plan represents Defendant Forest

---

[4]"Agency action" within the APA "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

> As a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decisionmaking process, ... it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Pennaco Energy, Inc.*, 377 F.3d at 1155 (citation omitted).

Service's "definitive statement of its position" as to the continuance of fee collection within the Mt. Evans area. 377 F.3d at 1155. Even though the plan recognized that picnic tables were not yet installed within the area, and the plan prescribed collection of fees for the use of road corridors through the area, the Court, as further described below, deems these issues moot in light of the subsequently issued documents as provided for in the administrative record. That these issues are moot does not implicate mootness of the Plaintiffs' entire case. Plaintiffs bring claims relating to multiple provisions of the REA, and many of the presented issues can be reduced to the Defendants' statutory interpretation of the term "area" within the meaning of the REA, which is the premise for the HIRA classification of Mt. Evans stated in the implementation plan.

The second requirement for a final action is satisfied both by the obligation to pay a recreation fee and by the legal consequences to non-payment, as codified in the REA's enforcement provision. Thus, the Court accepts the September 2005 implementation plan as final agency action and therefore satisfies itself of subject matter jurisdiction.

## II.    Statutory Construction and Interpretation pursuant to *Chevron*

The Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 844 (1984). Pursuant to *Chevron*, "[w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions." 467 U.S. at 842. First, the Court must evaluate "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43. In the alternative, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*.

at 843.

Plaintiffs assert that the Court should not evaluate Defendants' application of the REA under *Chevron* deference because the REA carries criminal penalties; instead, the Court should evaluate Defendants' application of the REA pursuant to the rule of lenity. Plaintiffs cite to *Crandon v. United States*, 494 U.S. 152, 177 (1990), *Seneca-Cayuga Tribe of Oklahoma v. National Indian Gaming Commission*, 327 F.3d 1019, 1031 (10th Cir. 2003), and *United States v. McGoff,* 831 F.2d 1071, 1077 (D.C. Cir. 1987) for their proposition that "courts have expressly rejected the applicability of *Chevron* deference in criminal cases." (Docket #112 at 13.)

Plaintiffs rely on Justice Scalia's concurrence in *Crandon*, not on the order of the Court. Justice Scalia opined that "the law in question, a criminal statute, is not administered by any agency but by the courts. It is entirely reasonable . . . that federal officials should make available to their employees legal advice regarding its interpretation . . . but that is not the sort of specific responsibility for administering the law that triggers *Chevron*." *Crandon*, 494 U.S. at 177. Notably, the statute at issue in *Crandon* is codified in Title 18 of the United States Code, governing crimes and criminal procedure. *See id.* at 157-58. Similarly, the Tenth Circuit in *Seneca-Cayuga Tribe of Oklahoma* evaluated the Johnson Act, which is "a federal criminal statute enforced by the United States Department of Justice" and thus not owed deference to construction by the National Indian Gaming Commission. 327 F.3d at 1031. In *McGoff*, the D.C. Circuit considered an appeal of a criminal prosecution under a comprehensive regulatory scheme that lacked a statute of limitations. The *McGoff* Court explained how "the law of crimes must be clear. There is less room in a statute's regime for flexibility, a characteristic so familiar . . . in the interpretation of statutes entrusted to agencies for administration." 831 F.2d at 1077.

Here, the Court finds disingenuous Plaintiffs' characterization of the REA as a "criminal statute" subject to the rule of lenity. The rule of lenity "instructs courts to interpret ambiguous

criminal statues favorably to the accused." *United States v. Ruiz-Gea*, 340 F.3d 1181, 1188 (10th Cir. 2003) (citation omitted). "But the rule of lenity is applied only when all other techniques for statutory construction leave the court in equipoise." *Id.* (citing *Muscarello v. United States*, 524 U.S. 125, 138 (1998)). The penalties provided for in the REA are more comparable to those discussed by the Supreme Court in *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, rather than the criminal matters evaluated in *Crandon*, *Seneca-Cayuga Tribe of Oklahoma*, and *McGoff*. *See Babbitt*, 515 U.S. 687 (1995). *Babbitt* concerned a challenge to a regulation promulgated under the Endangered Species Act and was brought against the Secretary of the Interior and the Fish and Wildlife Service. In *Babbitt*, the Supreme Court explained that they "have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement." 515 U.S. at 704 n.18. The *Babbitt* Court analyzed how the rule of lenity turns on the adequacy of notice of criminal penalty. In that case, because the regulation "existed for two decades and [gave] a fair warning of its consequences," the regulation was not subject to the rule of lenity. *Id.*

Congress entrusted specific responsibility for administering the REA to the Secretary of Agriculture. 16 U.S.C. § 6802(a). Part of administering the REA includes explicit instruction to enforce payment of the recreation fees authorized by the REA. 16 U.S.C. § 6811(a). As stated, the REA repealed the Recreational Fee Demonstration Program, enacted in 1996, which previously provided authority for the collection of admission and special recreation use fees. *See* 16 U.S.C. § 6812(b). Therefore, collection of fees on federal lands under certain circumstances has been known to the public since at least the implementation of the Fee Demonstration program in 1997, and the challenged 2005 implementation plan corroborates this conclusion through its representation that fees have been collected at Mt. Evans since July 1997. *See* Admin R. at E00129.

In a Briefing Paper dated February 13, 2008, Defendant Forest Service explains, "[s]ince 1997, people driving to the top of Mount Evans and back *who do not park and use the amenities* have not been charged a fee, although they are required to obtain a pass." Admin. R. at E00459 (emphasis in original). Additionally, a July 2, 2007 Memorandum of Understanding between the Colorado Department of Transportation and Defendant Forest Service indicates that, "[p]rior to opening of the Mount Evans Road to traffic, the Forest Service [posted] signage at the entrance to the fee area consistent with the Forest Service's National Guidelines for Recreation Fee Signs for High-Impact Recreation Areas." *Id*. at E00589. The sign states, "PARKED VEHICLES MUST DISPLAY A VALID RECREATION PASS NEXT 15 MILES." *Id*. at E00592, E00598. This sign replaced a sign instructing visitors that "a pass is required to travel beyond this point." *Id*. at E00459.

The Court concludes it is not novel, unforeseen, or unusual to expect a consequence to non-payment of a fee required for the recreational use of federal land in an area in which fees have been collected since 1997, nor is the REA's enforcement language difficult to understand. The Court finds there is no ambiguity in the plain language of Section 6811 within the REA, and, as further explained below, *Chevron* provides ample instruction for statutory construction and interpretation in this matter. The Court thus rejects Plaintiffs' assertion that it should apply the rule of lenity to Defendants' interpretation of the REA.

## III.    The Mt. Evans HIRA is properly designated as an area in which fees can be collected pursuant to the nine requirements delineated in the REA.

Plaintiffs dispute Defendants' characterization of the Mt. Evans area as an area in which fees can be collected because not all sites within the Mt. Evans HIRA include each of the nine requirements articulated in the REA. Section 6802(f) of the REA, in pertinent part, provides that a standard amenity recreation fee may be charged as follows:

Except as limited by subsection (d) of this section, the Secretary may charge a standard amenity recreation fee for Federal recreational lands . . under the jurisdiction of . . . the Forest Service, but only at the following:

. . .

(4) An area - -
       (A) that provides significant opportunities for outdoor recreation;
       (B) that has substantial Federal investments;
       (C) where fees can be efficiently collected; and
       (D) that contains all of the following amenities:
              (I) Designated developed parking.
              (ii) A permanent toilet facility.
              (iii) A permanent trash receptacle.
              (iv) Interpretive sign, exhibit, or kiosk.
              (v) Picnic tables.
              (vi) Security services.

The final agency action challenged by Plaintiffs, the September 2005 REA implementation plan, explains its purpose as fulfilling a request "to determine what changes in the Mount Evans recreation fee system are needed to comply with REA." Admin. R. at E00129. The plan identifies "Interim Implementation Guidelines" as its internal authority for designating the Mt. Evans area as a HIRA. *Id*. The plan recognizes REA's nine requirements and asserts that the Mt. Evans HIRA "provides significant recreation opportunities for scenic viewing, wildlife watching, photography, hiking, picnicking, hunting, nature study and research. The Mt. Evans HIRA has a single point of entry and exit, which makes fee collection very efficient." *Id*. Additionally, in support of the requisite fee-efficiency, "the Mount Evans area currently has one Information/Fee booth conveniently located at the access point to the area." *Id*. at E00130. Regarding substantial federal investment, the plan describes how components of the Mt. Evans HIRA contain certain facilities and trail systems maintained by federal funding, and that Defendant Forest Service "interpreters and volunteers provid[e] scheduled programs and hikes on topics . . . at the Dos Chappell Nature Center, Upper Goliath Trailhead, Summit Lake, and Mount Evans summit." *Id*. Defendant Forest Service "safety/courtesy patrols and an emergency call phone located at the beginning of the corridor" intended for visitor safety satisfy the amenity requirement for security services. *Id*.

A chart appended to the plan demonstrates which sites within the Mt. Evans area contain certain amenities. Admin. R. at E00133. To summarize the chart, designated developed parking areas, permanent restrooms, and permanent trash receptacles are provided at three developed sites, and four developed sites include interpretive signs, exhibits or kiosks. *Id*. at E00131. Picnic tables are the only missing requirement. In the "Implementation Actions" section of the plan, Defendant Forest Service writes that it "will provide picnic tables, prior to or early in the 2006 operating season to complete the full range of amenities available in this concentrated recreation use area of Mount Evans." *Id*. at E00132. A 2006 Mt. Evans Recreation Enhancement Project Summary represents that "[o]ne picnic table was placed at the Upper Goliath trailhead and one placed on [Forest Service] land at Summit Lake." *Id*. at E00238.

The plan represents that all but one (the picnic tables) of the six standard amenities were provided for at the time the plan was authored, in September 2005. Defendant Forest Service plainly stated, "[i]t is recognized that while not every individual site within the Mount Evans area provides all of the required amenities, there are substantial amenity investments at various sites conveniently located at reasonable access distances through the area." *Id*. at E00130-31.

Pursuant to *Chevron*, the Court must first evaluate "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. In the alternative, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843.

In accordance with *Chevron* analysis, the Court finds that Congress has directly spoken to the circumstances within which a standard amenity fee may be collected pursuant to the REA, with one exception. The nine delineated requirements are clearly stated in Section 6802(f)(4)(A - D) of

the REA, and Defendants meet each requirement as described in the 2005 implementation plan and the 2006 project summary. However, as alluded to by Defendant Forest Service in the implementation plan, the term "area" lacks distinct parameters. The Court believes the term "area," undefined by the statute, constitutes the crux of this dispute.

Plaintiffs assert that "following the enactment of the REA, the Service exercised considerable discretion by defining and designating standard amenity fee areas called HIRAs, which are not specifically mentioned in the REA, and giving no weight to or explanation for bypassing the limiting language at 16 U.S.C. 6802(d) and (e)."[5] (Docket #112 at 18.) Plaintiffs contend that "the Service has documented only four sites along a 15 mile stretch of highway where any amenities are in place. . . . None of the sites has all of the six amenities required for charging a standard amenity fee." (*Id*. at 7; docket #117 at 4.) Plaintiffs speculate that the term "standard amenity" intends to make clear "that the fee [is] not for general recreation and travel on federal lands, but for the use and enjoyment of sites that contain specific required amenities." (*Id*. at 22.)

Defendants argue that "the term area denotes a geographical region. Instead of imposing quantitative measurements to limit fee areas, REA describes the bounds of the geographic regions in terms of amenities and other attributes." (Docket #113 at 20.) Defendants thus believe that "the Forest Service can properly charge a fee for a geographic region containing the amenities and attributes listed in REA's nine requirements." (*Id*.) Defendants represent that the standard amenity fee collected at Mt. Evans "is charged for the use of the aggregated amenities in the HIRA." (*Id*. at 23.) Defendants believe the collection of a standard amenity fee at Mt. Evans is "consistent with the structure, text, and legislative history of the statute," because the HIRA system at Mt. Evans is "a valid - and perhaps the only valid - way of reconciling REA's provisions and reality to collect

---

[5]The Court evaluates Plaintiffs' concerns regarding the REA's limiting language in the following section of this order.

standard amenity recreation fees in an effective manner." (*Id*. at 25, 26.)

The Court agrees with Defendants. Under *Chevron*, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." 467 U.S. at 843. Although "area" is not defined by any term of mileage or any other quantitative measurement (including by site, as referred to by Plaintiffs), "area," within the meaning and purpose of the REA provision for recreation fee authority, is defined by the nine characteristics stated in Section 6802(f). As the nine requirements are present within the Mt. Evans recreation area, Defendants properly characterized the area as an area in which a standard amenity fee may be collected.[6] Accordingly, the Court declines to set aside the final agency action that designated the Mt. Evans area as an area in which fees can be collected and finds such action was not arbitrary, capricious, an abuse of discretion, or in excess of statutory authority.

## IV. The designation of the Mt. Evans area as a HIRA does not violate the limiting language of the REA.

Plaintiffs believe that Defendants' designation of the Mt. Evans area as a HIRA, even if concordant with Section 6802(f)'s affirmative requirements, impermissibly disregards the prohibitions on fee collection listed in Section 6802(d) of the REA. Section 6802(d)(1) lists prohibitions on fees as follows:

> The Secretary shall not charge any standard amenity recreation fee . . . for Federal recreational lands . . . administered by . . . the Forest Service . . . for any of the following:
> (A) Solely for parking, undesignated parking, or picnicking along roads or trailsides.
> (B) For general access unless specifically authorized under this section.
> (C) For dispersed areas with low or no investment unless specifically authorized

---

[6]To briefly address Plaintiffs' argument regarding the lack of explicit authority to name an area containing the nine requirements a "High Impact Recreation Area," the Court concludes that the name of the area bears no legal meaning on whether the nine requirements are met, and such naming is well within the purview of the Secretary entrusted with the execution of the REA.

under this section.
(D) For persons who are driving through, walking through, boating through, horseback riding through, or hiking through Federal recreational lands and waters without using the facilities and services.
(E) For camping at undeveloped sites that do not provide a minimum number of facilities and services as described in subsection (g)(2)(A) of this section.
(F) For use of overlooks or scenic pullouts.
 . . .

Additionally, Section 6802(e)(2) bars charging an entrance fee "for Federal recreational lands and waters managed by . . . the Forest Service."  Section 6801(3) defines an entrance fee as "the recreation fee authorized to be charged to enter onto lands managed by the National Park Service or the United States Fish and Wildlife Service."

Plaintiffs allege "the Forest Service charges a fee for all activities except nonstop travel anywhere within the Mt. Evans HIRA, including visitors parked within the state highway right of way, in City- and County-owned Parks, and at overlooks and scenic pullouts." (Docket #112 at 23.) More specifically, Plaintiffs argue that collection of fees in this manner facially violates the REA provisions codified in Section 6802(d)(1)(A), (B), (E) and (F), as well as the bar on charging an "entrance fee."  Regarding Section 6802(d)(1)(C), prohibiting the collection of fees for "dispersed areas with low or no investment," Plaintiffs aver that Defendant Forest Service clearly contradicted this statutory directive in its Interim Guidelines stating that "fees can be charged for dispersed areas if they are located within a HIRA."  (Docket #112 at 25 (citing to Admin. R. at E00058).) Plaintiffs assert that Defendant Forest Service "acknowledges that areas adjacent to the HIRA are wilderness and agrees that the Mt. Evans corridor is bounded by the wilderness."  (*Id*.)  Despite this acknowledgment, Plaintiffs represent that Defendant Forest Service collects a fee from visitors parked along the Mt. Evans corridor who are accessing the dispersed wilderness areas.  (*See id*.)  As to Section 6802(d)(1)(D) prohibiting the collection of fees from "persons who are driving through, walking through, boating through, horseback riding through, or hiking through Federal recreational

lands and waters without using the facilities and services," Plaintiffs contend that Defendant Service's "REA transition plan" indicates the fee should be charged for "Use of Road Corridors." (*Id*. at 26-27 (citing to Admin. R. at E00129).)

As a blanket response, Defendants assert that the prohibitions within Section 6802(d)(1) apply to "the use of specified facilities by themselves." (Docket #113 at 30.) Defendants emphasize that the qualifier attached to these provisions, "unless specifically authorized under this section," implicates Section 6802(f), which authorizes the Secretary to set an area conforming with certain criteria in which to collect a standard amenity fee. (*See id*.) Defendants state that the standard amenity fee collected in the Mt. Evans HIRA is administered for the aggregated amenities, facilities, and services present within the HIRA. (*Id*. at 30-31.)

The Court addresses the alleged violations in turn.

### A.      *Section 6802(d)(1)(D)*

Plaintiffs contend that, based on the implementation plan's instruction to collect the standard amenity fee for use of "designated road corridors for travel or for parking" through the HIRA, Defendants willingly violate Section 6802(d)(1)(D). (Docket #112 at 26-27 (citing to Admin. R. at E00131).) This section prohibits a fee for "persons who are driving through, walking through, boating through, horseback riding through, or hiking through Federal recreational lands and waters without using the facilities and services."

Defendants represent that presently, after evaluation and refinement of Defendant Forest Service's policies, "occupied parked vehicles at undeveloped sites or unoccupied parked vehicles where the occupants are in close proximity to the vehicle are considered to be in through-travel status and therefore not subject to the recreation fee." (Docket #113 at 33.) In support of this statement, Defendants explain how, in 2008, two signs were installed "to inform visitors who intend to travel non stop through the HIRA that they do not have to pay a fee." (*Id*. at 14 (signs state

"Travel Non Stop on Road No Charge").) *See also* Admin. R. at E00597. Additionally, the 2006 and 2008 Operations Manuals include instruction that persons meeting the criteria in Section 6802(d)(1)(D) may proceed through the HIRA without purchasing a pass. Admin. R. at E00251 and E00467. Defendants describe the standard greeting given to the public, implemented in May 2007, as letting the public know that travel non-stop through the HIRA will not incur the amenity fee. *Id.* at E00432. Based on these representations, the Court finds that, even if Plaintiffs properly complain about the language in the 2005 implementation plan as violative of Section 6802(d)(1)(D), the dispute is mooted by the current policies and the more recent Operations Manual.[7]

**B.    Sections 6802(d)(1)(A), (B), and (F); Section 6802(e)**

Section 6802(d)(1)(A), (B), and (F), and Section 6802(e) bear similar meaning in the context of this lawsuit. These provisions preclude the charging of a fee solely for parking or picnicking along roads or trailsides, solely for the use of overlooks or scenic pullouts, for general access, or as an entrance fee.

The Court must apply "the traditional canons of statutory construction when interpreting a statute." *Lamb v. Thompson*, 265 F.3d 1038, 1051 (10th Cir. 2001). The Court's duty is "to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section." *Id.* (citation omitted). Applying this principle to the sections of the REA at issue, the Court finds permissible Defendants' construction of these provisions as stand-alone limitations. As the nine requirements are present in the Mt. Evans HIRA, Defendants may charge and collect a standard amenity fee as delineated by the REA within the physical bounds of the Mt. Evans HIRA. Without

---

[7]Additionally, regarding persons walking through the HIRA, Defendant Forest Service asserts that it is reasonable for it to presume that any visitor away from his or her vehicle within the HIRA is likely somehow utilizing the available amenities. This presumption is consistent with the guiding criteria contained with the REA itself, in that "[t]he amount of the recreation fee shall be commensurate with the benefits and services provided to the visitor." 16 U.S.C. § 6802(b)(1).

the setting of a geographic area within which the fee may be collected, Defendant Forest Service would be tasked with monitoring each visitor's activities within the HIRA to determine, on a case by case basis, whether the visitor is participating in an activity that implicates a fee.  (*See* docket #115 at 22-24 (Defendants explaining the same and referring to *United States v. Wallace*, 476 F. Supp. 2d 1129 (D. Ariz. 2007)).)  This process would be inconsistent with both the purpose of the REA and the "[s]pecial considerations" identified in the statute, in that the Secretary is obligated to "avoid the collection of multiple or layered recreation fees for similar uses, activities, or programs." 16 U.S.C. § 6802(c).

The Court believes Congress recognized this possibility by its inclusion of "where fees can be efficiently collected" as a criterion within Section 6802(f)(4).  Additionally, the Court finds Defendants' reasoning consistent with Section 6802(b), articulating the basis for recreation fees. Congress instructed the Secretary to set the amount of a recreation fee as "commensurate with the benefits and services provided to the visitor," to "consider the aggregate effect of recreation fees on recreation users and recreation service providers," and to "consider the public policy or management objectives served by the recreation fee."  16 U.S.C. § 6802(b)(1), (2), (4).  Requiring the Forest Service to check each and every car or visitor for their level of usage within the HIRA would be expensive and burdensome for the Service and intrusive for visitors, which in turn violates the spirit and purpose of the statute.[8]  In light of *Chevron* deference, the Court believes Defendants' interpretation of the limitations within the REA as stand-alone is within their statutory authority, is consistent with the purpose of the REA, and is thus not arbitrary or capricious.

_____

[8]In any event, as Defendants inform the Court that "occupied parked vehicles at undeveloped sites or unoccupied parked vehicles where the occupants are in close proximity to the vehicle are considered to be in through-travel status and therefore not subject to the recreation fee," such policy does not implicate potential violations of Sections 6802(d)(1)(A), (B), and (F) or Section 6802(e). (*See* docket #113 at 33.)

## C.    Section 6802(d)(1)(C) and (E)

Sections 6802(d)(1)(C) and (E) concern the prohibition of fees collected in dispersed areas or for camping at undeveloped sites.  Notably, the prohibition of fees collected in dispersed areas is qualified by the phrase "unless specifically authorized under this section."  Plaintiffs assert that visitors who park in the HIRA in order to access the dispersed areas or camp at undeveloped sites are improperly charged a fee, as the Forest Service is charging a *de facto* parking fee.  Moreover, Plaintiffs argue that the Forest Service "promotes this corridor precisely because it provides convenient wilderness access."  (Docket #112 at 25.)  Plaintiffs believe that, as the dispersed wilderness within the Mt. Evans HIRA is not "in reasonable reach" of any amenities, charging the standard amenity fee within the HIRA violates Section 6802(d)(1)(C).  (*Id.*)

In response, Defendants explain how "the Forest Service is not charging for access to those wilderness areas [or for camping at undeveloped sites], but rather for the use of the required amenities and services within the HIRA."  (Docket #113 at 31.)  Defendants attest that "there are ways to access the wilderness areas adjacent to the HIRA without paying a fee."  (*Id.*)  *See also* Admin. R. at E00593 (Mt. Evans Recreation Area map).  Additionally, Defendants contend that "Plaintiffs' factual allegations of Forest Service actions are irrelevant to the issue to be decided in this case," namely, whether Defendants exceeded their statutory authority in designating the Mt. Evans area as an area in which a standard amenity fee could be collected, pursuant to the REA.  (*See id.* at 33 n.12.)

"Determination of whether the agency acted within the scope of its authority requires a delineation of the scope of the agency's authority and discretion, and consideration of whether on the facts, the agency's action can reasonably be said to be within the range."  *Olenhouse*, 42 F.3d at 1574 (citation omitted).  The Court previously concluded that the designation of the Mt. Evans area as a HIRA pursuant to the REA was proper, as the area includes the nine statutory requirements

and "area" is not otherwise defined by the statute. The Service's policy to not charge the standard amenity fee for travel through the HIRA non-stop or against "occupied parked vehicles at undeveloped sites or unoccupied parked vehicles where the occupants are in close proximity to the vehicle" is consistent with the prohibitions delineated by the REA.

"Agency action is arbitrary and capricious if the agency 'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency,' or if the agency action 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Copar Pumice Co., Inc.*, 603 F.3d at 793 (citation omitted). After consideration of Plaintiffs' various challenges to the designation of the Mt. Evans area as a HIRA, in light of the prohibitions delineated in the REA, the Court finds that the agency's interpretation of its instruction from Congress embodied in the REA is not counter to the evidence at Mt. Evans nor implausible to the level of imputing doubt on the agency's expertise. The agency is charged with fee implementation under certain circumstances with the purpose of reinvesting the funds into the federal property, and the administrative record demonstrates the agency's adherence to this directive. Accordingly, the Court declines to set aside the final agency action that designated the Mt. Evans area as an area in which fees can be collected and finds such action was not arbitrary, capricious, an abuse of discretion, or in excess of statutory authority.

## V.     Non-federal land is permissibly included within the Mt. Evans HIRA.

Plaintiffs object to Defendants' alleged enforcement of the standard amenity fee on non-federal land within the Mt. Evans HIRA. The Mt. Evans HIRA includes a State of Colorado-owned and maintained highway (Highway 5) and two parks owned by the City and County of Denver (Echo Lake and Summit Lake). (*See* docket #67 at 14-15; docket #113 at 37.) Plaintiffs believe neither the Property Clause of the United States Constitution nor the REA itself permits Defendants to

enforce the collection of fees in the portions of the Mt. Evans HIRA owned by the state or the city.

Defendants rely on the Organic Act delegating authority to the Secretary of Agriculture and the Property Clause of the United States Constitution in support of their contention that Defendants are authorized "to enforce payment of the fee on adjacent City-owned lands, . . . [as] necessary to protect the government's interest in fairly administering fees for the use of REA-compliant federal lands and facilities." (Docket #113 at 37.) Defendants explain how the Forest Service and the City and County of Denver, as well as the State of Colorado, entered into agreements regarding the collection of federal fees within the HIRA. (*Id*. at 37-38.)

The Property Clause grants broad power to Congress to "make all needful Rules and Regulations respecting the Territory and other Property belonging to the United States." U.S. Const., art. IV, § 3, cl. 2. "It is well-established law that this clause grants power to the United States to regulate conduct on non-federal land when reasonably necessary to protect adjacent federal property or navigable waters." *Grand Lakes Estates Homeowners Ass'n v. Veneman*, 340 F. Supp. 2d 1162, 1166-67, (D. Colo. 2004) (citing *United States v. Lindsey*, 595 F.2d 5, 6 (9th Cir.1979)); *see also Kleppe v. New Mexico*, 426 U.S. 529, 538, (1976). This District further recognized that "federal regulation may exceed federal boundaries when necessary for the protection of . . . government forest land or objectives." *Grand Lakes Estates Homeowners Ass'n*, 340 F. Supp. 2d at 1167. The Tenth Circuit agrees that Section 551 of 16 U.S.C. "authorizes the Secretary of Agriculture in the management of the forests to issue rules 'to regulate their occupancy and use.' As long as such rules and regulations tend to protect the lands and faithfully preserve the interest of the people of the whole country in the lands, the courts should enforce such rules and regulations." *United States v. Hymans*, 463 F.2d 615, 617 (10th Cir. 1972) (citation omitted).

As stated, the REA delegates authority to the Secretary of Agriculture, with regard to lands managed by the Forest Service, to "establish, modify, charge, and collect recreation fees at Federal

recreational lands." 16 U.S.C. § 6802(a). Section 6805 of the REA explicitly delegates authority to enter into fee management agreements "with any governmental or nongovernmental entity . . . for the purpose of obtaining fee collection and processing services." This provision also contemplates "cooperative site planning and management provisions" in a "fee management agreement." 16 U.S.C. § 6805(c).

Defendants contracted regarding federal activity within the Mt. Evans HIRA with the State of Colorado in a 1997 agreement (Admin. R. at E00578), renewed the 1997 agreement in 2000 (*id*. at E00584), and expounded upon the agreement in a 2007 Memorandum of Understanding (*id*. at E00587). The same was performed with the City and County of Denver in 1997 (*id*. at E00535, E00539) and included a lease between the city and the Forest Service for the Echo Lake fee station in 1997 (*id*. at E00549). The Forest Service and City and County of Denver also collaborated in a 2002 collection agreement (*id*. at E00555) and a 2007 collection agreement (*id*. at E00564). The 2007 collection agreement provides that Denver agrees to "[p]rovide compliance checks at Summit Lake Park when the Forest Service is not available," indicating the Service would primarily conduct compliance checking at the City-owned property. (*Id*. at E00566.)

The Court finds Defendants' actions regarding the collection of the standard amenity fee at the Mt. Evans HIRA on city- and state-owned property are consistent with and authorized by the Organic Act in Title 16 and by the explicit instruction articulated in Section 6805 of the REA. The intent of Congress is clear in Section 6805, and "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."[9] *Chevron*, 467

---

[9]Moreover, in the House Report accompanying the REA, Congressman Pombo stated that "[t]he public benefits from collaborative efforts that minimize multiple fees, or allow visitors to pay a single fee or coordinate fee arrangements for entrance into adjacent recreation areas operated by different agencies or levels of government." H.R. Rep. No. 108-780(I), 2004 WL 2920863, at *14 (2004).

U.S. at 842-43. Accordingly, the Court rejects Plaintiffs' argument and declines to set aside the final agency action that designated the Mt. Evans area, including the city-owned parks and state-owned highway, as an area in which fees can be collected and finds such action was not arbitrary, capricious, an abuse of discretion, or in excess of statutory authority.

## CONCLUSION

In sum, Plaintiffs challenge the 2005 REA implementation plan which initially designated the Mt. Evans area as a "High Impact Recreation Area" in which fees can be collected pursuant to the REA. Plaintiffs believe that the area is improperly defined as a HIRA because not all sites within the Mt. Evans HIRA include each of the nine requirements articulated in the REA and the designation impermissibly disregards the REA's delineated limitations on fee collection. Furthermore, Plaintiffs object to the inclusion of non-federal land subject to the federal amenity fee within the Mt. Evans HIRA.

The Court concluded, after review of the pleadings and the administrative record, that the rule of lenity does not apply in this adjudication and thus, the Court applied the two-part *Chevron* analysis in evaluating Plaintiffs' challenge. As to the subparts of Plaintiffs' claim, the Court finds as follows. The 2005 implementation plan and subsequent 2006 project summary demonstrate that the Mt. Evans area, labeled a HIRA, includes the nine statutory requirements described by the REA. Defendants may therefore charge a standard amenity fee for recreational use of the Mt. Evans HIRA. The agency's interpretation of the term "area" as defined by amenities and not per site or by some other quantitative measurement is a reasonable interpretation of the statutory provision.

Defendants comply with the prohibition against charging a fee for nonstop travel through the Mt. Evans HIRA as demonstrated by the 2008 Operations Manual. Regarding the remaining prohibitions highlighted by Plaintiffs, the Court finds that Defendants' stated policy to not require "occupied parked vehicles at undeveloped sites or unoccupied parked vehicles where the occupants

are in close proximity to the vehicle" to pay the standard amenity fee is consistent with the prohibitions delineated by the REA. In any event, without the setting of a distinct geographic area within which the fee may be collected, Defendant Forest Service would be tasked with monitoring each visitor's activities within the HIRA to determine, on a case by case basis, whether the visitor is participating in an activity that implicates a fee. As the purpose of the REA "is to improve recreational facilities and visitor opportunities on federal recreational lands by reinvesting receipts from fair and consistent recreational fees and passes," the agency's interpretation of the prohibitions as stand-alone limitations is reasonable and consistent with the REA's principles. H.R. Rep. No. 108-780(I), 2004 WL 2920863, at *12 (2004).

The same holds true with Defendants' collaboration with the City and County of Denver regarding the inclusion of the two city-owned parks within the Mt. Evans HIRA. The statute provides explicit instruction to the Secretary to cooperate with other governmental entities in the management of fee collection at federal recreational lands. Congressional intent on this point is clear, thus the Court finds the Defendants' actions regarding the collection of the standard amenity fee at the Mt. Evans HIRA on city- and state-owned property are consistent with and authorized by the REA.

Within the constraints of judicial review of final agency action pursuant to the APA, the Court holds that Defendants reasonably interpreted and implemented the provisions of the REA at the Mt. Evans recreation area, consistent with the statute's purpose of preserving recreational opportunities in natural areas with the reinvestment of recreation fees. The Court recognizes the Plaintiffs' goal of eliminating, or at the least, narrowing the fee collection authority of the Forest Service at Mt. Evans, however the Court believes that seeking redress through a judicial remedy does not and will not successfully serve that interest. The REA replaced earlier legislation regarding the collection of fees on federal recreational lands; perhaps legislative means would be a more

effective route for Plaintiffs to achieve their objectives.

For the reasons stated above and the entire record herein, the Court finds that, pursuant to the Administrative Procedures Act standard of review and the plain language of the REA, Defendants did not exceed their statutory authority, nor did the challenged final agency action constitute an arbitrary or capricious exercise of such authority. Accordingly, Defendants are entitled to judgment in their favor on all claims in this case, and judgment will enter for Defendants contemporaneously with this order.

Dated at Denver, Colorado, this 22nd day of July, 2010.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge